**David ARNOLD, Plaintiff,**

v.

**C.O. A. GOETZ, Sgt. A. Montegari, and C.O. W. Kelly, Defendants.**

**No. 01 Civ. 8993(WK).**

United States District Court, S.D. New York.

Feb. 4, 2003.

David Arnold, Green Haven Correctional Facility, Drawer B, Stormville, NY, for Plaintiff, pro se.

Rebecca Ann Durden, Assistant Attorney General, Office of the Attorney General of the State of New York, New York, NY, for Defendants.

## *OPINION & ORDER*

WHITMAN KNAPP, Senior District Judge.

Plaintiff David Arnold ("Arnold" or the "plaintiff") is an inmate at the Green Haven Correctional Facility. Arnold, proceeding *pro se*, brought this action pursuant to 42 U.S.C. § 1983 in order to recover damages for an alleged assault he suffered at the hands of Correctional Officer A. Goetz, Correctional Officer W. Kelly, and Sergeant A. Montegari (collectively the "defendants"). The defendants argue that Arnold failed to exhaust his administrative remedies and thereby failed to satisfy the exhaustion requirement imposed by the Prison Litigation Reform Act of 1995, Pub.L. No. 104–134, Title VIII, § 803(d), 110 Stat. 1321–71 (1996) (codified as amended at 42 U.S.C. § 1997e(a))("PLRA"). As such, they now move to dismiss Arnold's action pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## *BACKGROUND*

Arnold is an inmate at the Green Haven Correctional Facility. (Am. Compl. at 2.) On June 22, 2001, Correctional Officer A. Goetz ("Goetz") ordered Arnold "to lock in." (Am. Compl. at 3.) Thereafter, Goetz allegedly entered Arnold's cell, grabbed him by the neck, and told Arnold that he would have "to learn to respect him." (Am. Compl. at 4.) When Goetz then purportedly pushed Arnold's face towards Goetz's crotch and told the plaintiff to "suck his penis," Arnold refused and began to struggle with him. *Id.* Goetz allegedly responded by beating the plaintiff. *Id.* He then led Arnold out of his cell and purportedly threw him to the floor in such a manner that the plaintiff struck his head. *Id.*

At this stage, another correctional officer escorted Arnold down some stairs. *Id.* While the plaintiff stood facing a wall in handcuffs, Correctional Officer W. Kelly ("Kelly") and Sergeant A. Montegari ("Montegari") came by to question Arnold regarding his assault against a staff member. (Am. Compl. at 5.) Before the plaintiff had a chance to answer their questions, Montegari and Kelly allegedly began to beat him. *Id.*

In light of the purported injuries he sustained from these assaults, the plaintiff brought this action against Goetz, Kelly, and Montegari pursuant to 42 U.S.C. § 1983. After filing his initial Complaint in 2001, he later filed an Amended Complaint in January 2002. In his Amended Complaint, the plaintiff indicated that a grievance procedure existed at the Green Haven Correctional Facility. (*See* Am.

Compl. at 2.) He also indicated that he had never presented the facts related to the assaults to correctional officials by way of that procedure. *See id.* In responding to a question on the form complaint which inquired about why the plaintiff failed to follow the grievance procedure, he simply stated: "Because I did not know what to do." (Am. Compl. at 3.)

Shortly after the plaintiff filed his Amended Complaint, the defendants moved to dismiss this action. They contend that the action must be dismissed because the plaintiff failed to exhaust his administrative remedies in satisfaction of the PLRA's exhaustion requirement. When the plaintiff failed to respond to that motion over the ensuing months, we issued an order affording him one more opportunity to submit such a response. *See Arnold v. Goetz* (S.D.N.Y. Dec. 17, 2002) No. 01 Civ. 8993(WK), 2002 U.S. Dist. LEXIS 24224, at *1–*2. We directed Arnold to submit an opposition brief, if he so chose, by January 17, 2003. *Id.* at *2. As part of that directive, we also allowed Arnold to explain "what he meant when he indicated in his Amended Complaint that he 'did not know what to do' with respect to submitting a grievance" even though he apparently knew that a grievance program existed at Green Haven. *Id.* To date, Arnold has not submitted an opposition brief and has offered no explanation regarding his statements in the Amended Complaint.

## DISCUSSION

### I. Motion To Dismiss For Lack Of Subject Matter Jurisdiction

The defendants move this Court to dismiss the plaintiff's action pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. In other words, they contend that we lack subject matter jurisdiction to entertain this lawsuit and that the plaintiff has failed to state a claim

upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(1); Fed.R.Civ.P. 12(b)(6). Where, as here, the defendants have moved for dismissal under Rule 12(b)(1) as well as on other grounds, we must initially consider their Rule 12(b)(1) challenge since all other objections and defenses would become moot and need not be addressed if we first dismiss the action for lack of subject matter jurisdiction. *United States ex rel. Kreindler & Kreindler v. United Techs. Corp.* (2d Cir.) 985 F.2d 1148, 1155–1156, *cert. denied* (1993) 508 U.S. 973, 113 S.Ct. 2962, 125 L.Ed.2d 663; *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n* (2d Cir.1990) 896 F.2d 674, 678.

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of a complaint when the court "lacks jurisdiction over the subject matter." Fed. R.Civ.P. 12(b)(1). However, the PLRA's exhaustion requirement is not jurisdictional in nature. *Graham v. Perez* (S.D.N.Y. 2000) 121 F.Supp.2d 317, 322. *See also Handberry v. Thompson* (S.D.N.Y. Jan. 28, 2003) No. 96 Civ. 6161(CBM), 2003 WL 194205, at *3 ("the PLRA exhaustion requirement is not jurisdictional"); *Mendoza v. Goord* (S.D.N.Y. Nov. 21, 2002) No. 00 Civ. 0146(GEL), 2002 WL 31654855, at *2 n. 3 (" § 1997e(a)'s exhaustion requirement is not jurisdictional"); *Rodriguez v. Ghoslaw* (S.D.N.Y. June 28, 2002) No. 98 Civ. 4658(GEL), 2002 WL 1424586, at *2 ("Failure to exhaust is not a jurisdictional matter"); *Cuoco v. U.S. Bureau of Prisons* (S.D.N.Y. Mar. 31, 2000) No. 98 Civ. 9009(WHP), 2000 WL 347155, at *8 ("Exhaustion of administrative remedies under the PLRA is not jurisdictional"); *Santiago v. Meinsen* (S.D.N.Y.2000) 89 F.Supp.2d 435, 441 ("the exhaustion requirement of the PLRA is not jurisdictional"); *Howard v. Headly* (E.D.N.Y.1999) 72 F.Supp.2d 118, 122–123 ("[T]he Fifth, Sixth, Seventh,

and Ninth Circuits have held that the administrative exhaustion provision of 42 U.S.C. § 1997e(a) is not a jurisdictional requirement ... It is assumed that the Second Circuit will concur, as the Court does, ... and hold, as have all those circuits courts which have considered the issue, that the statute does not preclude subject matter jurisdiction."); *Hayes v. N.Y.S. D.O.C. Officers* (S.D.N.Y. Dec. 28, 1998) No. 97 Civ. 7383(MBM), 1998 WL 901730, at *7 n. 4 (internal citations omitted) ("[T]he vast majority of courts to have considered the issue have concluded that exhaustion under the PLRA is not a jurisdictional prerequisite. In light of § 1997e(c)(2), these courts are plainly correct.").

▮ Rather, "[w]hen a defendant raises a prisoner's failure to comply with the PLRA's exhaustion requirement, the failure is properly assessed as an affirmative defense." *Gonzalez v. Officer in Charge of Barber Shop on Duty on May 13, 1999* (S.D.N.Y. Mar. 13, 2000) No. 99 Civ. 3455(DLC), 2000 WL 274184, at *3. *See also Acosta v. Artuz* (2d Cir.2000) 221 F.3d 117, 121 (referring to the failure to exhaust administrative remedies in compliance with the PLRA as an affirmative defense); *Jenkins v. Haubert* (2d Cir.1999) 179 F.3d 19, 28–29 ("Because, under the PLRA, a prisoner must exhaust administrative remedies before filing a § 1983 suit ..., a defendant in a prisoner § 1983 suit may also assert as an affirmative defense the plaintiff's failure to comply with the PLRA's requirements."); *Reyes v. Punzal* (W.D.N.Y.2002) 206 F.Supp.2d 431, 433 ("in the Second Circuit, failure to comply with the PLRA's exhaustion requirement is viewed as an affirmative defense"); *John v. N.Y.C. Dep't of Corr.* (S.D.N.Y. 2002) 183 F.Supp.2d 619, 624 ("Failure to comply with the exhaustion requirement is an affirmative defense."); *Hallett v. New York State Dep't of Corr. Servs.* (S.D.N.Y. 2000) 109 F.Supp.2d 190, 196 ("[I]n the Second Circuit, failure to comply with the PLRA's exhaustion requirement is viewed as an affirmative defense."); *Cuoco*, 2000 WL 347155, at *8 ("Exhaustion of administrative remedies under the PLRA ... is an affirmative defense."); *Howard v. Goord* (E.D.N.Y. Dec. 28, 1999) No. 98–CV–7471 (FB), 1999 WL 1288679, at *2 ("When a defendant raises a prisoner/plaintiff's failure to comply with the PLRA's exhaustion requirement, the failure is properly assessed as an affirmative defense."). For that reason, the defense "may be waived by a defendant, or forfeited by failure to raise the defense." *Rodriguez*, 2002 WL 1424586, at *2. *See also Perez v. Wisconsin Dep't of Corr.* (7th Cir.1999) 182 F.3d 532, 536 ("Defendants may waive or forfeit reliance on § 1997e(a), just as they may waive or forfeit the benefit of a statute of limitations."); *Graham*, 121 F.Supp.2d at 322 ("[T]he exhaustion requirement of the PLRA ... may be waived in appropriate circumstances."). *Cf. Davis v. New York* (2d Cir.2002) 316 F.3d 93, 101 (remanding case to district court to consider whether defendants waived compliance with the PLRA's exhaustion requirement by failing to raise the issue).

Although many courts agree that the PLRA's exhaustion requirement is not a jurisdictional prerequisite, we are cognizant that this view is not universally held in our district. A split exists among our fellow courts with respect to this issue. *See Handberry*, 2003 WL 194205, at *3; *Law v. Bergamini* (N.D.N.Y. Dec. 19, 2002) No. 01–CV–463 (LEK/DEP), 2002 U.S. Dist. LEXIS 25434, at *8 n. 3, *approved* (N.D.N.Y. Jan. 14, 2003) 2003 U.S. Dist. LEXIS 487, at *4–*5. Certain courts in this district have dismissed an inmate's § 1983 action for lack of subject matter jurisdiction in accordance with Rule

12(b)(1) where they determined that the inmate failed to exhaust his administrative remedies. *See Harris v. Totten* (S.D.N.Y. Jan 31, 2003) No. 01 Civ. 5214(SHS), 2003 WL 221745, at *1, *4; *Paulino v. Amicucci* (S.D.N.Y. Jan. 27, 2003) No. 02 Civ. 208(LAP), 2003 WL 174303, at *2–*3; *Timmons v. Pereiro* (S.D.N.Y. Jan. 27, 2003) No. 00 Civ. 1278(LAP), 2003 WL 179769, at *1–*2; *Cherry v. Edwards* (S.D.N.Y. Nov. 20, 2002) No. 01 Civ. 7886(AGS), 2002 WL 31619038, at *1–*2; *Meehan v. Frazier* (S.D.N.Y. Oct. 27, 2002) No. 01 Civ. 9591(KMW)(KNF), 2002 U.S. Dist. LEXIS 20604, at *11; *Benitez v. Straley* (S.D.N.Y. Sept. 18, 2002) No. 01 Civ. 0181(RCC)(RLE), 2002 WL 31093608, at *2–*3; *Hines v. Valhalla County Corr. Facility* (S.D.N.Y. Aug. 8, 2002) No. 0C Civ. 6935(SAS), 2002 WL 1822740, at *1, *4; *Monsalve v. Parks* (S.D.N.Y. June 21, 2002) No. 01 Civ. 6010(LMM), 2002 WL 1359725, at *3; *Long v. Lafko* (S.D.N.Y. July 31, 2001) No. 00 Civ. 723(VM), 2001 WL 863422, at *2; *Hernandez v. Greiner* (S.D.N.Y. May 1, 2000) No. 99 Civ. 4601(NRB), 2000 WL 520639, at *2; *Williams v. Muller* (S.D.N.Y. April 25, 2000) No. 98 Civ. 5204(BSJ), 2000 WL 487954, at *3. *Cf. Johnson v. Bendheim* (S.D.N.Y. July 13, 2001) No. 00 Civ. 720(JSR), 2001 WL 799569, at *4; *Rodriguez v. Goord* (S.D.N.Y. Dec. 1, 2000) No. 99 Civ. 11665(VM), 2000 WL 1773513, at *1–*2; *Lombardo v. Goord* (S.D.N.Y. July 26, 2000) No. 99 Civ. 1676(NRB)(KNF), 2000 U.S. Dist. LEXIS 10476, at *6–*7.

We respectfully disagree with the primary premise underlying these decisions, namely that the PLRA's exhaustion requirement implicates a court's subject matter jurisdiction. *See, e.g., Long,* 2001 WL 863422, at *1. Although the Second Circuit has yet to rule on this question, every circuit court to have considered the issue has concluded that an inmate's failure to comply with § 1997e(a) does not deprive federal courts of jurisdiction. *See Casanova v. Dubois* (1st Cir.2002) 289 F.3d 142, 146; *Ali v. District of Columbia* (D.C.Cir. 2002) 278 F.3d 1, 5–6; *Foulk v. Charrier* (8th Cir.2001) 262 F.3d 687, 697 (citing *Chelette v. Harris* (8th Cir.2000) 229 F.3d 684, 686–688, *cert. denied* (2001) 531 U.S. 1156, 121 S.Ct. 1106, 148 L.Ed.2d 977); *Nyhuis v. Reno* (3d Cir.2000) 204 F.3d 65, 69 n. 4; *Wyatt v. Leonard* (6th Cir.1999) 193 F.3d 876, 879; *Rumbles v. Hill* (9th Cir.1999) 182 F.3d 1064, 1068, *cert. denied* (2000) 528 U.S. 1074, 120 S.Ct. 787, 145 L.Ed.2d 664; *Perez,* 182 F.3d at 535; *Dickey v. Kennard* (10th Cir. Sept. 2, 1998) No. 97–4206, 156 F.3d 1243, 1998 WL 568026, at *1 (unpublished table decision); *Underwood v. Wilson* (5th Cir.1998) 151 F.3d 292, 295, *cert. denied* (1999) 526 U.S. 1133, 119 S.Ct. 1809, 143 L.Ed.2d 1012.

■ Many of these circuit courts arrived at this conclusion for two reasons. As the Fifth Circuit explained, "[a] statute requiring exhaustion of administrative remedies may be jurisdictional if it is 'more than a codified requirement of administrative exhaustion' and contains 'sweeping and direct' statutory language that goes beyond a requirement that only exhausted actions be brought." *Underwood,* 151 F.3d at 294 (quoting *Weinberger v. Salfi* (1975) 422 U.S. 749, 757, 95 S.Ct. 2457, 45 L.Ed.2d 522). However, " '[section] 1997e(a) contains no such sweeping and direct language barring federal jurisdiction under 28 U.S.C. § 1331.' " *Rumbles,* 182 F.3d at 1067 (quoting *Underwood,* 151 F.3d at 294). *See also Ali,* 278 F.3d at 5–6; *Chelette,* 229 F.3d at 688.

Other provisions of the PLRA, such as 42 U.S.C. § 1997e(c)(2), also counsel against construing the PLRA's exhaustion requirement as a jurisdictional prerequisite. Section 1997e(c)(2) allows a district

court to dismiss a prisoner's claims for a number of specific reasons without first requiring the exhaustion of administrative remedies. *Rumbles*, 182 F.3d at 1068 (citing 42 U.S.C. § 1997e(c)(2)). "The court would not be empowered to do so if the exhaustion provision deprived the court of jurisdiction over the action." *Underwood*, 151 F.3d at 295. *See also Chelette*, 229 F.3d at 687; *Nyhuis*, 204 F.3d at 69 n. 4; *Hayes*, 1998 WL 901730, at *7 n. 4.

■ These persuasive rationales are "irresistible and manifestly correct." *Handberry*, 2003 WL 194205, at *3. We therefore join the chorus of voices concluding that an inmate's failure to exhaust administrative remedies in accordance with the PLRA does not divest federal courts of jurisdiction. The Second Circuit is unlikely to reach a contrary determination given the court's decision in *Jenkins*, 179 F.3d at 28–29, which characterized the PLRA's exhaustion requirement as an affirmative defense. *See Handberry*, 2003 WL 194205, at *3 ("The Second Circuit's ... cases are inconsistent with the position that exhaustion is jurisdictional ..."). As the Second Circuit recently explained, a "district court's subject matter jurisdiction to entertain a suit based on a federal claim ... is not defeated by a defendant's assertion of a position that is properly characterized as an affirmative defense." *In re Stock Exchs. Options Trading Antitrust Litig.* (2d Cir.2003) 317 F.3d 134, 150–51. Since the PLRA's exhaustion requirement is an affirmative defense and not a jurisdictional prerequisite, dismissing an inmate's action for lack of subject matter jurisdiction where he failed to exhaust his administrative remedies would be inappropriate. As such, to the extent that the motion at bar is brought pursuant to Rule 12(b)(1), it is denied.

## II. Motion To Dismiss For Failure To State A Claim Upon Which Relief Can Be Granted

■ In addition to their Rule 12(b)(1) challenge, the defendants also contend that the plaintiff's action must be dismissed pursuant to Rule 12(b)(6). Rule 12(b)(6) provides for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Under that rule, the Court "must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Jaghory v. New York State Dep't of Educ.* (2d Cir. 1997) 131 F.3d 326, 329. Dismissal of a complaint pursuant to Rule 12(b)(6) is proper " 'only where it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle him to relief.' " *Scotto v. Almenas* (2d Cir.1998) 143 F.3d 105, 109–110 (quoting *Branham v. Meachum* (2d Cir.1996) 77 F.3d 626, 628 (citation omitted)). Furthermore, where, as here, we are considering a motion to dismiss the claims of a litigant proceeding *pro se*, we must construe that litigant's pleadings liberally, especially when we are dealing with a complaint alleging civil rights violations. *Weinstein v. Albright* (2d Cir.2001) 261 F.3d 127, 132. *See also Flaherty v. Lang* (2d Cir.1999) 199 F.3d 607, 612.

■ The defendants argue that the plaintiff's action must ·be dismissed because he failed to exhaust his administrative remedies. Since the PLRA's exhaustion requirement is an affirmative defense, the defendants "bear[ ] the burden of proving plaintiff's failure to comply with the exhaustion requirement." *Reyes*, 206 F.Supp.2d · at 433. *See also Borges v. Adm'r for Strong Mem'l Hosp.* (W.D.N.Y. Sept. 30, 2002) No. 99–CV–6351 (FE), 2002 WL 31194558, at *3; *Hallett*, 109

F.Supp.2d at 196; *Gonzalez*, 2000 WL 274184, at *3; *Howard v. Goord* (E.D.N.Y. Dec. 28, 1999) No. 98–CV–7471 (FB), 1999 WL 1288679, at *3.

 "Ordinarily, plaintiffs pursuing civil rights claims under 42 U.S.C. § 1983 need not exhaust administrative remedies before filing suit in court. Prisoner suits alleging constitutional deprivations while incarcerated once fell within this general rule." *Porter v. Nussle* (2002) 534 U.S. 516, 523, 122 S.Ct. 983, 152 L.Ed.2d 12 (internal citations omitted). "Congress, in enacting the Prison Litigation Reform Act of 1995[ ], Pub.L. No. 104–134, Title VIII, 110 Stat. 1321–66 (1996), carved out an exception to the general rule that exhaustion of state remedies is not a prerequisite to filing suit under 42 U.S.C. § 1983." *Neal v. Goord* (2d Cir.2001) 267 F.3d 116, 119.

 The PLRA amended 42 U.S.C. § 1997e(a) so that it now provides:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). *See also Neal,* 267 F.3d at 119. "Under this provision, exhaustion of administrative remedies is now mandatory for Section 1983 actions regarding prison conditions." *Edney v. Karrigan* (S.D.N.Y.1999) 69 F.Supp.2d 540, 543. *See also Porter,* 534 U.S. at 524, 122 S.Ct. 983 ("Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory.")[1] In other words, "[a] prisoner must exhaust all available remedies before bringing an action regarding prison conditions." *Graham,* 121 F.Supp.2d at 321; *Santiago,* 89 F.Supp.2d at 438.

 The Supreme Court recently clarified that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter,* 534 U.S. at 532, 122 S.Ct. 983. Hence, "claims of every sort relating to conditions and occurrences of prison life—including individual claims of assault or excessive force—must be exhausted before an action can be commenced in this Court pursuant to 42 U.S.C. § 1983." *Dixon v. Goord* (S.D.N.Y.2002) 224 F.Supp.2d 739, 750.[2]

**1.** Congress introduced an exhaustion prescription for suits initiated by state prisoners even before the enactment of the PLRA. *See Porter,* 534 U.S. at 523, 122 S.Ct. 983 (citing the Civil Rights of Institutionalized Persons Act, Pub.L. No. 96–247, § 7, 94 Stat. 352 (1980)) (codified as amended at 42 U.S.C. § 1997e (1994 ed.)). That measure imposed a limited exhaustion requirement for a claim brought by a state prisoner under § 1983. *See McCarthy v. Madigan* (1992) 503 U.S. 140, 150, 112 S.Ct. 1081, 117 L.Ed.2d 291. "Exhaustion under the 1980 prescription was in large part discretionary; it could be ordered only if the State's prison grievance system met specified federal standards, and even then, only if, in the particular case, the court believed the requirement 'appropriate and in the interests of justice.' " *Porter,* 534 U.S. at

523, 122 S.Ct. 983 (citations omitted). The PLRA invigorated the exhaustion prescription, *id.* at 524, 122 S.Ct. 983, and removed court discretion in this area by making exhaustion mandatory in prisoner litigation. *Salahuddin v. Mead* (2d Cir.1999) 174 F.3d 271, 274 n. 1.

**2.** Before the Supreme Court arrived at its decision in *Porter v. Nussle,* the Second Circuit had concluded "that exhaustion of administrative remedies [was] not required for claims of assault or excessive force brought under § 1983." *Nussle v. Willette* (2d Cir. 2000) 224 F.3d 95, 106, *rev'd,* (2002) *Porter,* 534 U.S. at 532, 122 S.Ct. 983. Although Arnold brought his § 1983 action for assault before the Supreme Court announced its deci-

The plaintiff's § 1983 action, predicated on allegations of assault, falls within the ambit of § 1997e(a). As such, the plaintiff is subject to the exhaustion requirement imposed by the PLRA and cannot proceed with this lawsuit unless he exhausted the available administrative remedies. "Where an inmate fails to satisfy the PLRA's exhaustion requirement[ ] prior to filing his complaint, the court must dismiss the complaint and require the plaintiff to exhaust his remedies before refiling." *Burns v. Moore* (S.D.N.Y. Jan. 24, 2002) No. 99 Civ. 0966(LMM)(THK), 2002 WL 91607, at *3. *See also Boston v. Takos* (W.D.N.Y. Oct. 4, 2002) No. 98–CV–6404 (CJS), 2002 WL 31663510, at *3; *Laureano v. Pataki* (S.D.N.Y. Sept. 29, 2000) No. 99 Civ. 10667(LAP), 2000 WL 1458807, at *1. However, "the failure to exhaust is not a ground for dismissal unless it is readily apparent from [the] plaintiff's pleadings and/or attachments." *Torrence v. Pesanti* (D.Conn.2003) 239 F.Supp.2d 230, 233.

New York provides an elaborate administrative grievance process for prisoners in New York State correctional facilities such as Green Haven. *See Cruz v. Jordan* (S.D.N.Y.1999) 80 F.Supp.2d 109, 117. *See also* N.Y. Correct. Law § 139; 7 N.Y. Comp.Codes R. & Regs.tit. 7, § 701.1 *et seq.* This process, known as the Inmate Grievance Program ("IGP"), offers inmates several methods to resolve their grievances. *Heath v. Saddlemire*

(N.D.N.Y. Oct. 7, 2002) No. 96–CV–1998 (FJS/RF), 2002 WL 31242204, at *4. The IGP sets forth both a formal procedure for all grievances as well as a less elaborate procedure for complaints about "harassment." *See* 7 N.Y. Comp.Codes R. & Regs. tit. 7, §§ 701 .7, 701.11.[3] *See also Gadson v. Goord* (N.D.N.Y. May 10, 2002) No. 98–CV–1224 (HGM/DEP), 2002 WL 982393, at *2. The latter procedure allows an inmate to pursue an expedited grievance regarding an assault he suffered at the hands of correctional officers. *Perez v. Blot* (S.D.N.Y.2002) 195 F.Supp.2d 539, 542–543. *See also Morris v. Eversley* (S.D.N.Y.2002) 205 F.Supp.2d 234, 240. Inmates may also comply with the IGP by resolving their grievances through informal channels. *See Marvin v. Goord* (2d Cir.2001) 255 F.3d 40, 43 n. 3 (citing 7 N.Y. Comp.Codes R. & Regs.tit. 7, § 701.1) ("Resolution of the matter through informal channels satisfies the exhaustion requirement, as, under the administrative scheme applicable to New York prisoners, grieving through informal channels is an available remedy.") *See also Heath,* 2002 WL 31242204, at *4–*5; *Gadson,* 2002 WL 982393, at *3; *Perez,* 195 F.Supp.2d at 545–546.

According to the plaintiff's Amended Complaint, he never presented the allegations at issue in this lawsuit to the correctional authorities by way of the IGP, even though he appears to have been aware that

---

sion in *Porter,* " 'the broad exhaustion requirement announced in [*Porter*] applies with full force' to a litigant ... who brought suit prior to the date of its decision." *Mack v. Artuz* (S.D.N.Y. Dec. 19, 2002) 01 Civ. 11832(JSR)(GWG), 2002 WL 31845087, at *3 n. 2 (quoting *Espinal v. Goord* (S.D.N.Y.July 17, 2002) 01 Civ. 6569(NRB), 2002 WL 1585549, at *2 n. 3). *See generally Harper v. Virginia Dep't of Taxation* (1993) 509 U.S. 86, 97, 113 S.Ct. 2510, 125 L.Ed.2d 74 ("When [the Supreme] Court applies a rule of federal law to the parties before it, that rule is the

controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the] announcement of the rule.")

3. In *Cruz,* Judge Hellerstein described the Inmate Grievance Program in exacting detail. *See Cruz,* 80 F.Supp.2d at 117–118. We need not elaborate on his extensive discussion.

a grievance procedure existed at Green Haven. (*See* Am. Compl. at 2.) The plaintiff apparently failed to follow the grievance procedure "[b]ecause [he] did not know what to do." (Am. Compl. at 3.)

▮ Under certain circumstances, a correctional institution's failure to provide an inmate with sufficient information about the available grievance procedures may excuse his failure to exhaust administrative remedies. *Hall v. Sheahan* (N.D.Ill. Feb. 2, 2001) No.2000 C 1649, 2001 WL 111019, at *1. As the court in *Hall* aptly explained, "an institution cannot keep inmates in ignorance of the grievance procedure and then fault them for not using it. A grievance procedure which is not made known to inmates is not an 'available' administrative remedy." *Id.* at *2 (citing *Johnson v. Garraghty* (E.D.Va.1999) 57 F.Supp.2d 321, 329).

This is a common sense approach to a situation where correctional authorities obstruct an inmate's ability to comply with the exhaustion requirement when they provide him with a grievance procedure but fail to supply him with the materials by which he can secure information about how to avail himself of that process. The approach is derivative of the general principle that an inmate's technical failure to exhaust administrative remedies before commencing a § 1983 action may be excused where officials prevented him from utilizing a grievance procedure. *See Johnson*, 57 F.Supp.2d at 329. *See also Miller v. Norris* (8th Cir.2001) 247 F.3d 736, 740 ("a remedy that prison officials prevent a prisoner from 'utiliz[ing]' is not an 'available' remedy under § 1997e(a)"); *Thomas v. New York State Dep't of Corr. Servs.* (S.D.N.Y. Sept. 30, 2002) No. 00 Civ. 7163(NRB), 2002 WL 31164546, at *3 ("[W]here a prisoner has made a 'reasonable attempt' to file a grievance, and prison officials have prevented the prisoner

from filing that grievance, the grievance procedure is not 'available' to the [inmate], and thus the [PLRA] does not preclude the prisoner from suing in federal court."); *O'Connor v. Featherston* (S.D.N.Y. April 29, 2002) No. 01 Civ. 3251(HB), 2002 WL 818085, at *2 (citations omitted) ("[S]everal courts have held that an inmate may nonetheless defeat a motion to dismiss even when the requirements of administrative remedies have not technically been exhausted where … an inmate makes a 'reasonable attempt' to exhaust his administrative remedies, especially where it is alleged that corrections officers failed to file the inmate's grievances or otherwise impeded or prevented his efforts …"); *Gonzalez*, 2000 WL 274184, at *3 (refusing to dismiss inmate's § 1983 action where he alleged that the plaintiff attempted to file grievances but was frustrated in these efforts by prison officials). *Cf. Davis v. Milwaukee County* (E.D.Wis.2002) 225 F.Supp.2d 967, 976 (absence of materials about the grievance procedure at the jail prevented the inmate from knowing how to exhaust his administrative remedies and thereby interfered with his access to the courts). In essence, prison officials cannot have it both ways—they cannot obstruct an inmate's pursuit of administrative exhaustion on the one hand and then claim the inmate did not properly exhaust these remedies on the other. *See Gadson,* 2002 WL 982393, at *3.

▮ Nonetheless, "correctional officials are entitled to the benefit of § 1997e(a) as long as the institution has made a reasonable, good faith effort to make the grievance procedure available to inmates; an inmate may not close his eyes to what he reasonably should have known." *Hall*, 2001 WL 111019, at *2. *Cf. Langford v. Couch* (E.D.Va.1999) 50 F.Supp.2d 544, 550–551 ("Absent any allegations or evidence that he was prevented

from complying with ... grievance procedures, plaintiff cannot avoid or evade § 1997e(a)'s exhaustion requirement."). However, when an inmate claims ignorance of the grievance procedure, "it becomes a question of fact whether the grievance procedure was an available administrative remedy he was required to exhaust." *Hall*, 2001 WL 111019, at *1.

Here, the plaintiff was not wholly ignorant of Green Haven's grievance program. His statements in the Amended Complaint suggest an awareness of a grievance procedure at Green Haven. (*See* Am. Compl. at 2.) However, the plaintiff contends that he did not know how to follow that procedure. From the face of his Amended Complaint, we cannot tell whether the plaintiff did not know how to follow that procedure (a) because he failed to take any steps to learn about the procedure or (b) because Green Haven officials failed to provide him with access to materials which might otherwise have informed him about how he could avail himself of that remedy. If the latter proposition is true, then the principles articulated in *Hall* apply with full force. An institution keeps an inmate ignorant of the grievance procedure when correctional officials either fail to inform him of the procedure altogether or fail to provide him with access to materials which could otherwise educate him about the use of that process. *Cf. Hall*, 2001 WL 111019, at *2 ("To be entitled to judgment on [the] grounds of non-exhaustion, defendants would need to establish that the grievance procedure was posted in such a manner that [the plaintiff] could reasonably be expected to see it, or that Jail employees explained the procedure to him."). A prisoner who is told that the Inmate Grievance Program exists, but whose efforts to learn how he can avail himself of the IGP are frustrated by correctional officials, is only marginally less ignorant of the grievance procedure than

an inmate wholly unaware of the program. Neither inmate, in effect, has recourse to an available administrative remedy.

In an attempt to clarify the statements he made in his Amended Complaint, we afforded the plaintiff an opportunity to explain what he meant when he indicated that he did not know how to follow the grievance procedure. *See Arnold*, 2002 U.S. Dist. LEXIS 24224, at *2. To date, the plaintiff has offered no such explanation. Nevertheless, his failure to do so does not mean that we must now mechanically dismiss his complaint without further consideration. Rather, we must "make reasonable allowances so that a *pro se* plaintiff does not forfeit rights by virtue of his or her lack of legal training." *Springs v. Clement* (E.D.N.Y.2001) 202 F.R.D. 387, 392 (citing *Traguth v. Zuck* (2d Cir.1983) 710 F.2d 90, 95). Indeed, "we read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe* (2d Cir.1999) 174 F.3d 276, 280 (quoting *Burgos v. Hopkins* (2d Cir.1994) 14 F.3d 787, 790). Moreover, in reviewing a motion to dismiss, we must "resolve all doubts and inferences in favor of the nonmoving party." *Mullin v. Rochester Manpower, Inc.* (W.D.N.Y.2002) 192 F.Supp.2d 80, 82. *See also Braxton v. Brown* (E.D.N.Y. Jan. 28, 1997) No. 96–CV–187, 1997 WL 43525, at *1; *McIlwain v. Perez* (E.D.N.Y. Jan. 22, 1997) No. 95–CV–3135, 1997 WL 38085, at *1.

As we have already discussed, the plaintiff's statements in the Amended Complaint lack clarity and raise serious questions about what he meant by them. His explanation suggests that he either made no effort to learn about the grievance procedure or that Green Haven officials might not have provided him with the materials necessary to inform him about the use of the IGP. Since the non-moving party is

proceeding *pro se*, we are obligated to resolve existing doubts in the plaintiff's favor and to read his Amended Complaint as raising the strongest argument it suggests (namely, that his lack of sufficient knowledge about the procedure is attributable to correctional officials rather than to himself). Giving the plaintiff the benefit of the doubt in this manner despite his failure to clarify his statements comports with the principle that the defendants bear the burden of proving that he failed to satisfy the PLRA's exhaustion requirement. *See Borges,* 2002 WL 31194558, at *3; *Reyes,* 206 F.Supp.2d at 433; *Hallett,* 109 F.Supp.2d at 196; *Gonzalez,* 2000 WL 274184, at *3.

The defendants have made at least a minimal effort to explain which resources were available to the plaintiff such that he could have educated himself about Green Haven's grievance program. They indicate that "grievance procedures are available to all inmates." (Defs.' Mem. of Law in supp. of Mot. to Dismiss ("Defs.' Brief") at 5.) According to the defendants, the procedures "are outlined in an inmate's standards of inmate behavior booklet, which is provided to an inmate upon his entrance to the corrections system." (Defs.' Brief at 5–6.) Moreover, the prison library purportedly contains copies of the code which describes the IGP. (*See* Defs.' Brief at 6.)

 This information presents us with a number of problems. First, the information is not corroborated by any accompanying affidavits; rather, the information consists of nothing more than allegations set forth in the defendants' memorandum of law. In addition, these uncorroborated allegations fall outside the pleadings. *See Fonte v. Bd. of Managers of Cont'l Towers Condo.* (2d Cir.1988) 848 F.2d 24, 25 ("Factual allegations contained in legal briefs or memoranda are also treated as matters

outside the pleadings for the purposes of Rule 12(b)."). The defendants have moved to dismiss the plaintiff's action pursuant to Rule 12(b)(6), and that rule "does not give the district court authority to consider matters outside the pleadings; it simply delineates the procedures which must be followed in testing the legal sufficiency of a complaint." *LaBounty v. Adler* (2d Cir. 1991) 933 F.2d 121, 123 (citing *Kopec v. Coughlin* (2d Cir.1991) 922 F.2d 152, 155). "If the movant[s] wish[ ] to test the factual underpinnings of the complaint, [they] may submit proper evidence outside the pleadings and move for summary judgment under Rule 56." *Id.*

The information submitted by the defendants also raises troubling factual questions which have not yet been answered. The defendants allege that the "behavior booklet" provided to an inmate upon his "entrance to the corrections system" outlines the available grievance procedures. (*See* Defs.' Brief at 5–6.) However, according to the New York State Department of Correctional Services' ("DOCS") Inmate Population Information Search, Arnold was taken into custody in June 1994. *See* DOCS' Inmate Population Information Search, *available at http://nysdocs.docs.state.ny.us* (last visited Feb. 4, 2003) (Arnold's relevant information may be accessed by entering his Department Identification Number). Congress had not yet passed the PLRA in 1994. Moreover, the IGP was updated less than two months before Arnold apparently entered the corrections system and the program's most elaborate provision, § 701.7, was further amended in 1998. *See* 7 N.Y. Comp.Codes R. & Regs.tit. 7, §§ 701.1—701.16. As such, it remains unclear whether any booklet which the plaintiff received when he first entered the corrections system outlined the relevant grievance procedures that an inmate could have invoked at the

time of the assaults at issue here. Furthermore, while the defendants contend that the prison library contains a copy of the code which describes the IGP process, the Amended Complaint suggests that the plaintiff was escorted to the Special Housing Unit ("SHU") after the defendants purportedly assaulted him. The defendants similarly indicate that he was held in the SHU at the time of the alleged assaults. (*See* Defs.' Brief at 1–2.) The defendants have not assured this Court that the plaintiff had access to the prison library from the SHU, nor that he had the option of perusing these materials once he was released from the SHU.

In sum, the defendants have sought to meet their burden by introducing allegations which (a) we cannot consider in reviewing a Rule 12(b)(6) motion, (b) have not yet been corroborated by way of an affidavit from a knowledgeable official, and (c) raise further troubling factual questions. "When a District Court is provided with materials outside the pleadings in the context of a 12(b)(6) motion to dismiss, it has two options: the court may exclude the additional materials and decide the motion on the complaint alone or convert the motion to one for summary judgment." *Sulton v. Greiner* (S.D.N.Y. Dec. 11, 2000) No. 00 Civ. 727(RWS), 2000 WL 1809284, at *1. Since the information submitted by the defendants, however deficient at this time, bears on the question of whether the plaintiff had access to resources which he could have used to educate himself about Green Haven's grievance procedure, we will not exclude the materials.

"If a judge looks to additional materials, the motion should be converted into a motion for summary judgment." *Hayden v. County of Nassau* (2d Cir.1999) 180 F.3d 42, 54. Where a court "converts a motion to dismiss to one for summary judgment, it must endeavor to provide the parties with adequate notice about the conversion and the consequences of summary judgment." *Howard v. Goord* (E.D.N.Y. Dec. 28, 1999) No. 98–CV–7471 (FB), 1999 WL 1288679, at *3. Because we do not exclude the additional materials submitted by the defendants, we convert the motion to one for summary judgment in accordance with Rule 12(b). *See* Fed.R.Civ.P. 12(b). Our decision today expressly puts the parties on notice of that conversion. However, as these additional materials are deficient for the aforementioned reasons, the defendants are directed to submit further briefing and evidence on the relevant issues. Once these submissions have been filed, the plaintiff will be afforded an opportunity to respond.

Where a court converts the motion to dismiss to one for summary judgment, a non-moving party who is proceeding *pro se* must be advised that all assertions of material fact in the defendants' affidavits and other papers in support of their motion will be taken as true unless the *pro se* litigant contradicts those factual assertions in one or more affidavits made on personal knowledge containing facts that would be admissible in evidence, or by submitting other materials as provided in Rule 56(e) of the Federal Rules of Civil Procedure. *See McPherson*, 174 F.3d at 281. The affidavits and any other documentary evidence submitted by the *pro se* litigant in opposition to the motion for summary judgment must " 'raise a genuine issue of fact as to every material element of the claim [and defense] and thereby preserve the case for trial.' " *Howard*, 1999 WL 1288679, at *3 (quoting *McPherson*, 174 F.3d at 281).

Accordingly, we put the plaintiff on the following specific notice:

We exercise our power to convert the defendants' Rule 12(b)(6) motion to dismiss this action on the grounds of exhaustion to a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. This means that we may decide this issue, without a trial, based on written materials, including affidavits, submitted in support of the motion. THE CLAIMS YOU ASSERT IN YOUR COMPLAINT MAY BE DISMISSED WITHOUT A TRIAL IF YOU DO NOT RESPOND TO THIS MOTION by filing your own sworn affidavits or other papers as required by Rule 56(e). An affidavit is a sworn statement of fact based on personal knowledge that would be admissible in evidence at trial. The full text of Rule 56 is set out at the end of this order.

In short, Rule 56 provides that you may NOT oppose summary judgment simply by relying upon the allegations in your complaint. Rather, you must submit evidence, such as witness statements or documents, countering the facts asserted by the defendants and raising issues of fact for trial. Any witness statements, which may include your own statements, must be in the form of affidavits. You may submit affidavits that were prepared specifically in response to the defendants' motion for summary judgment.

Any issue of fact that you wish to raise in opposition to the motion for summary judgment must be supported by affidavits or by other documentary evidence contradicting the facts asserted by the defendants. If you do not respond to the motion for summary judgment on time with affidavits or documentary evidence contradicting the facts asserted by the defendants, we may accept the defendants' factual assertions as true. Judgement may then be entered in the defendants' favor without a trial.

If you have any questions, you may direct them to the Pro Se Office.

## CONCLUSION

For the foregoing reasons, we hereby DENY the defendants' motion to dismiss the plaintiff's action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

The defendants' remaining motion to dismiss the plaintiff's action pursuant to Rule 12(b)(6) for failure to exhaust administrative remedies is hereby CONVERTED to a motion for summary judgment. Within 21 days of the entry of this order on the docket, the defendants shall file an answer which includes their affirmative defenses. If the defendants assert an affirmative defense in that answer which is predicated on the plaintiff's purported failure to exhaust his administrative remedies, the defendants shall, within 60 days of filing their answer, file and serve (a) a supplemental memorandum of law in support of their motion for summary judgment in accordance with the requirements set forth in Rule 56 of the Federal Rules of Civil Procedure; (b) a statement of material facts as to which they contend there is no genuine issue of fact to be tried in compliance with Local Civil Rule 56.1; (c) the necessary affidavits, made on personal knowledge, and any other evidence which supports their motion for summary judgment; and (d) as a precaution, the appropriate notice to the *pro se* plaintiff in conformance with Local Civil Rule 56.2. Within 60 days of the date that the defendants' submissions are filed, the plaintiff may respond to their motion for summary judgment in accordance with the express notice set forth above. If the plaintiff submits opposition papers, the defendants shall file a supplemental memorandum of law in reply thereto, and any necessary accompanying documents, within 30 days

of the date that the plaintiff's papers are filed.

**SO ORDERED.**

## Summary Judgment

### *Federal Rule of Civil Procedure 56*

**(a) For Claimant.** A party seeking to recover upon a claim, counterclaim, or cross-clam or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

**(b) For Defending Party.** A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

**(c) Motion and Proceedings Thereon.** The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

**(d) Case Not Fully Adjudicated on Motion.** If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

**(e) Form of Affidavits; Further Testimony; Defense Required.** Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

**(f) When Affidavits Are Unavailable.** Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a contin-

uance o permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

**(g) Affidavits Made in Bad Faith.** Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused the other party to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt.

### Statements of Material Facts on Motion for Summary Judgment

*Local Civil Rule 56.1*

(a) Upon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement may constitute grounds for denial of the motion.

(b) The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried.

(c) All materials set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

(d) Each statement of material fact by a movant or opponent must be followed by citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e).