GILMAN, Circuit Judge,
dissenting:
I agree with the majority that an inmate must do more than simply claim that he was unaware of the jail’s grievance procedure in order to show that administrative remedies were unavailable to him under the PLRA’s exhaustion requirement. In the present ease, however, Albino orally complained on several occasions to deputies at the jail about being raped and brutally assaulted by his fellow inmates, and about the jail’s failure to transfer him to protective custody following each assault. I believe that Albino’s actions were sufficient to trigger an obligation on the part of the jail to notify him of the existence of its grievance procedure. Because the jail in this case instead “stonewalled” Albino by not advising him of the proce *1040 dures necessary for him to seek redress for his complaints, I would hold that Albino has demonstrated that the administrative remedies were effectively unavailable to him and that he has therefore satisfied the PLRA’s exhaustion requirement. For this reason, I respectfully dissent.
I begin with what I believe is common ground between my view and the majority’s view regarding when a jail’s remedy is unavailable for purposes of the PLRA’s exhaustion requirement. As stated above, I agree with the majority that an inmate’s unawareness of the jail’s grievance procedure, on its own, is insufficient to make that procedure effectively unavailable to him. Otherwise, courts would constantly have to “inquir[e] into an individual inmate’s knowledge of the grievance process” — “a time-consuming task fraught with uncertainty, as any inmate could create a triable issue of fact merely by averring he did not know of the process.” Johnson v. District of Columbia, 869 F.Supp.2d 34, 42, 2012 WL 2355577, at *8 (D.D.C. June 21, 2012) (brackets, citation, and internal quotation marks omitted). Such a rule would encourage the ignorance of (rather than the use of) administrative remedies and would clog the courts, thereby thwarting the purposes underlying the exhaustion requirement. Cf. Arnold v. Goetz, 245 F.Supp.2d 527, 537 (S.D.N.Y. 2003) (noting that “an inmate may not close his eyes to what he reasonably should have known”) (internal quotation marks omitted).
I also agree with the majority that, at the other end of the spectrum, “affirmative actions by jail staff preventing proper exhaustion, even if done innocently, make administrative remedies effectively unavailable.” (Maj. Op. at 1033-34) Were this not the rule, a jail would be able to “have it both ways”: it could “obstruct an inmate’s pursuit of administrative exhaustion on the one hand and then claim the inmate did not properly exhaust these remedies on the other.” Goetz, 245 F.Supp.2d at 537. This outcome is antithetical to the notion of due process.
What makes the present case a close one is that it falls in between these two extremes. Albino is not alleging that the Los Angeles County Jail affirmatively interfered with his ability to exhaust his administrative remedies. But he is alleging a good bit more than subjective unawareness. His claim is that the jail had no policy of informing its inmates about its grievance procedure, that a typical inmate such as himself would have no clear basis to discover the procedure’s existence, and that he repeatedly made efforts to grieve by orally notifying the sheriffs deputies of his complaint and his desire to be placed in protective custody. This brings us to the two critical questions: (1) what should the rule be under such circumstances, and (2) how should that rule be applied to the facts of this case?
With respect to the first question, the majority holds that, when a jail has in place a procedure for complaining about the conditions of confinement, an inmate must “make reasonable, good-faith efforts to discover [that procedure] before unawareness may possibly make [it] unavailable.” (Maj. Op. at 1035; see also id. at 1037 (“Therefore, for an inmate to claim that a prison’s grievance procedure was effectively unavailable due to the inmate’s unawareness of the procedure, the inmate must show that the procedure was not known and [was] unknowable with reasonable effort.”)) I will not quibble with this formulation of the proper rule. As set forth by the majority, the rule is consistent with that adopted by the Eleventh Circuit, which held that the phrase “such remedies as are available” does not include “remedies or requirements for remedies that an *1041 inmate does not know about, and cannot discover through reasonable effort, by the time they are needed.” See Goebert v. Lee Cnty., 510 F.3d 1312, 1322 (11th Cir.2007).
Where I part ways with the majority is on the second question — whether, in construing the facts in the light most favorable to him, Albino actually made a reasonable, good-faith effort to discover the jail’s grievance procedure. In answering this question in the negative, the majority first concludes that “[t]he grievance procedure was accessible” because
(1) the procedure was outlined in Custody Division Manual § 5-12/010.00; (2) inmates could submit written grievances regarding any prison condition, whether or not the inmate utilized the formal Inmate Complaint Forms; (3) unit commanders were required to ensure that each housing facility had adequate Inmate Complaint Forms available and that inmates had unrestricted access to the forms; and (4) each housing unit was required to have locked repository boxes accessible to inmates so that inmates could deposit complaints without hindrance, or inmates could give complaints to jail staff.
(Maj. Op. at 1038 (citations omitted))
The majority is certainly right that these facts demonstrate that a grievance procedure actually existed. (See Maj. Op. at 1031-32) But that is all they show. The enumerated facts tell us nothing about whether an inmate such as Albino could have reasonably discovered that the procedure existed and was available to him. There is simply no evidence that inmates received copies of the Custody Division Manual or were otherwise made aware of the grievance procedure. Nor is there any evidence that the locked repository boxes or grievance forms were noticeable to or identifiable by the inmates (even if the inmates technically had access to both).
Yet the majority ultimately concludes that Albino has “provide[d] no evidence to show that he could not have discovered the grievance procedure with reasonable effort.” (Maj. Op. at 1038) In support of this conclusion, the majority contrasts the facts of Albino’s case with the facts of Goebert, in which the Eleventh Circuit held that the inmate had met her burden of showing that the administrative remedies were not available with reasonable effort.
I am puzzled by the majority’s reliance on Goebert. That case involved an inmate who failed to file an appeal of an adverse administrative response to her complaint, as required under the jail’s grievance procedure. The court excused her failure because, as the majority here points out, “the parties agreed that the inmate manual did not describe the procedure at issue and that the jail never permitted inmates to see the General Operating Procedures manual that actually did describe the procedure.” (Maj. Op. at 1038) On these facts, as even the majority acknowledges, “there was nothing in the record leading a reasonable inmate to believe there was an appeal procedure or indicating that an inmate could have discovered the appeal procedure upon a reasonable effort.” (Maj. Op. at 1035-36)
In attempting to distinguish Goebert from the present case, the majority recites the previously mentioned facts, reasoning that “Albino fails to dispute that the Custody Division Manual described the grievance procedure in § 5-12/010.00, that jail policies required every housing unit to have an adequate supply of Inmate Complaint Forms, or that locked grievance repositories existed in each housing unit.” (Maj. Op. at 1038) But again, these facts show only that the grievance procedure exists. They do not suggest that Albino should have been aware of the procedure *1042 any more than the existence of the appellate procedure in Goebert suggested that Goebert should have been aware of it.
To the contrary, when the facts are construed in the light most favorable to Albino, they show that he persistently complained to deputies at the jail about his repeated assaults and about the jail’s failure to transfer him to protective custody following each assault. Not once, however, was he ever told that he could submit a written complaint in one of the locked boxes apparently located in each housing unit.
The majority disregards these complaints because they were made orally as opposed to in writing, the latter being required by the jail’s grievance procedure. But Albino had not been made aware of this procedure and had not received a copy of the Custody Division Manual. In my opinion, these facts satisfy the “good-faith effort” standard announced by the majority and should have triggered on the part of the jail an obligation to alert Albino to the existence of the jail’s grievance procedure.
Instead, the deputies at various times (a) did nothing, (b) disclosed the nature of his charges to the other inmates (which precipitated the assaults), and (c) told him that only his attorney could help him. Albino deserved better. Under the circumstances, his repeated attempts to inform the deputies of his complaints should be considered “reasonable and appropriate steps to exhaust his ... claim[s].” Cf. Nunez v. Duncan, 591 F.3d 1217, 1224, 1226 (9th Cir.2010) (holding that exhaustion is satisfied when the prisoner “took reasonable and appropriate steps to exhaust his ... claim and was precluded from exhausting, not through his own fault but by the Warden’s mistake,” or by the Warden’s “bad faith or deliberate obstruction”). I believe that the deputies’ silence in the face of Albino’s complaints constitutes a “mistake” by the jail that precluded Albino from exhausting his claims.
As the Eleventh Circuit in Goebert explained:
That which is unknown and unknowable is unavailable; it is not “capable of use for the accomplishment of a purpose.” Booth [v. Churner], 532 U.S. [731,] 738, 121 S.Ct. [1819, 149 L.Ed.2d 958 (2001) ]. If we allowed jails and prisons to play hide-and-seek with administrative remedies, they could keep all remedies under wraps until after a lawsuit is filed and then uncover them and proclaim that the remedies were available all along. The Queen [of Hearts in Alice’s Adventures in Wonderland ] would be proud.
Goebert, 510 F.3d at 1323. This policy concern should apply with equal force here.
In sum, although the majority adopts a rule that is formally consistent with Goebert, the majority’s application of that rule is anything but. I am frankly at a loss to determine what the majority thinks would have constituted a “good-faith effort” to discover the grievance procedure in this case. Put more simply: What more should Albino have done? In my view, once an inmate engages in a sincere effort to complain about the conditions of his confinement to someone with authority at the jail, that assertion should trigger on the part of the jail an obligation to inform the inmate about the proper procedure to pursue his complaint. Because the jail in this case “kept [Albino] in the dark about the path [he] was required to follow,” see id., I would reverse the judgment of the district court in favor of the sheriff.