253 F.Supp.2d 821 (2003)
Wayne E. HARVEY,
v.
The CITY OF PHILADELPHIA, Corrections Officer Mason.
Civil Action No. 00-CV-4879.
United States District Court, E.D. Pennsylvania.
March 27, 2003.
*828 Wayne E. Harvey, Waynesburg, PA, for Plaintiff.
Robin B. Arnold, Deputy City Solicitor, City of Phila Law Dept., Philadelphia, PA, for Defendant.

MEMORANDUM AND ORDER
SAVAGE, District Judge.
Plaintiff Wayne E. Harvey ("plaintiff) initiated this civil rights action pursuant to 42 U.S.C. § 1983 for alleged violations of his Eighth and Fourteenth Amendment rights.[1] He seeks compensatory damages for injuries he suffered during an altercation with the defendant Corrections Officer Mason while an inmate in the defendant City of Philadelphia's prison on March 6, 2000. Arguing that the plaintiff has not exhausted the available administrative remedies, the defendants[2] have moved for summary judgment.
Because the plaintiff cannot refute the indisputable evidence that he failed to pursue the prison's grievance process, we must grant the motion and enter judgment in favor of the defendants.
At the time of the alleged incident, the plaintiff was incarcerated at the Philadelphia Industrial Correctional Center ("PICC"), a prison facility managed by the City of Philadelphia. In his amended complaint, the plaintiff alleges that he got into a verbal and physical altercation with defendant Mason after complaining that he did not receive the special meal meeting his mandated dietary restrictions. (Complaint ¶¶ 7-11). The plaintiff claims he suffered minor injuries and was placed in punitive segregation as a result of the incident. (Complaint ¶ 16). He asserts that the defendant Mason used excessive force; there was an institutional failure to properly train corrections officers in the use of force; and, there is a custom and policy in the Philadelphia Prison System of not properly distributing special dietary meals to eligible inmates. (Complaint ¶¶ 25-27).
In their answer, the defendants raised the affirmative defense of failure to exhaust administrative remedies. (Affirm.Def.¶6). After the close of discovery, the defendants moved for summary judgment. On January 10, 2003, this Court ordered the defendants to file, in support of their motion, a statement of material facts which they contend are undisputed. The plaintiff was given an opportunity to respond to the defendants' statement of undisputed facts and to include any additional facts which he believes would preclude summary judgment. The parties *829 were directed to include specific references to the record to support their statements. (Order for Stmt, of Undisputed Facts [Docket No. 27]). The parties submitted their respective statements which we shall consider in determining this motion, giving the plaintiff the benefit of every doubt.

Legal Standard
Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In arguing against summary judgment, an adverse party may not rely upon allegations or denials in his pleadings. Fed.R.Civ.P. 56(e). Instead, the adverse party "must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Id.
Relying on an affirmative defense as the basis for summary judgment, a defendant must establish the absence of a genuine issue of material fact as to each element of the defense. Anderson v. Deluxe Homes of PA, Inc., 131 F.Supp.2d 637, 649 (M.D.Pa.2001) (quoting David B. Lilly Co., Inc. v. Fisher, 810 F.Supp. 592, 594-95 (D.Del.1992) (rev'd on other grounds 18 F.3d 1112 (3d Cir.1994))). Once the defendant meets this threshold, the burden shifts to the plaintiff to set forth a genuine dispute of material fact as to any element essential to the affirmative defense. Id. If the plaintiff does so, summary judgment must be denied. Id.
The Prison Litigation Reform Act of 1996 ("PLRA") provides that a prisoner can not bring an action under Section 1983 or any other federal law until the prisoner has first exhausted all administrative remedies available to him. 42 U.S.C. § 1997e(a);[3]see Booth v. Churner, 206 F.3d 289, 294 (3d Cir.2000) affd 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). This bright-line rule permits no exception. A court lacks the power to excuse a failure to exhaust. Thus, where the prisoner has not exhausted his administrative remedies, a court cannot reach the merits of the plaintiffs claim. Nyhuis v. Reno, 204 F.3d 65, 73-75 (3d Cir.2000).

Failure to Exhaust Administrative Remedies
The defendants argue that the plaintiff has neither alleged nor established that he filed a grievance pursuant to the Philadelphia Prison System's policy which details the procedures an inmate can use to report a variety of issues, including violations of civil, constitutional and statutory rights. The defendants incorrectly argue that there is a heightened pleading standard requiring the plaintiff to allege that he has exhausted his administrative remedies. Ray v. Kertes, 285 F.3d 287, 297 (3d Cir.2002). The plaintiff did, however, allege in his amended complaint that he "exhausted the only remedies available to him." (Amend. Complaint ¶ 21). Nevertheless, the plaintiff has not presented any evidence, direct or indirect, to challenge the defendants' evidence that he did not pursue his administrative remedies. See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir.1999) (citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).
*830 The Philadelphia Prison System Inmate Handbook outlines the procedures for filing a grievance. (Philadelphia Prison System Inmate Handbook at 43, found at Def. Resp. to PI. Reply to Def. Mot. Summ. J. at Ex. A). These procedures require an inmate, at a minimum, to file something in writing and place it in a designated collection box. (Philadelphia Prisons Policies and Procedures at 1-7, found at Def. Mot. Summ. J. at Ex. B). After completing the multi-part grievance form, the inmate retains a copy. Id. The handbook also provides that an inmate may forward his grievance directly to the Commissioner if he believes that he is being denied access to the normal procedures. Id. The plaintiff cannot document having taken any of these steps. On the other hand, the defendants have presented evidence proving that he did not file a grievance. The plaintiff alleges, without any supporting evidence, that he filed a grievance in this matter on March 6, 2000, the same day of the incident; but, the grievance was never answered and the record of the grievance was lost when he was transferred from county to state custody.[4] (Aff. in Opp. to Def. Mot. Summ. J. ¶¶ 15-7; Ans. to Def. Stmt. Undisputed Facts ¶ 4). Yet, in his deposition, the plaintiff did not mention that his paperwork had been lost. On the contrary, he testified that he had mailed his papers home before he was transferred; and, he agreed to provide the documents to defense counsel later. (Def. Deposition at 32, found at Def. Mot. Summ. J. at Ex. E). He never produced any documents evidencing the filing of a grievance.
A comprehensive search of all grievances filed at the correctional facility produced no record of any grievance filed by the plaintiff in 2000. (Jones Aff. ¶¶ 3-5). The plaintiff does not dispute the negative search results. (Ans. to Def. Stmt. Undisputed Facts ¶ 3).
The search, however, did produce two unrelated grievances previously filed by the plaintiff on November 14, 1999, and on December 2, 1999. (Murphy Aff. ¶ 6). The plaintiff acknowledges that he filed these earlier grievances. (Ans. to Def. Stmt. Undisputed Facts ¶ 5).
The plaintiff does not contend that the prison officials denied him access to the grievance process or prevented him from filing a grievance. He claims the officials did not respond to his filed grievance. The distinction is significant because if the plaintiff had been denied the necessary grievance forms or was otherwise prevented from pursuing the administrative process, he could claim that he lacked an administrative remedy. See Brown v. Croak, 312 F.3d 109, 113 (3d Cir.2002). However, according to the plaintiff, he did initiate the grievance process by filing a grievance which went unanswered. The prison handbook specifically provides that an inmate can forward a grievance directly to the Commissioner if he believes that he "is being denied access to the grievance process, for example, his/her grievance allegedly has been destroyed by staff." (Philadelphia Prisons Policies and Procedures at 7, found at Def. Mot. Summ. J. at Ex. B). The plaintiff fails to explain his failure to follow the procedure, with which he was familiar, by forwarding a grievance to the Commissioner.
In the absence of corroborative documentation, the plaintiff offers an alternative theory in his attempt to satisfy the exhaustion requirement. He maintains that the Pennsylvania Prison Society ("Society") filed a grievance for him. On March 20, 2000, a Society volunteer interviewed the plaintiff pursuant to the consent *831 decree in Lester v. Shuler. (Aff. in Opp. To Def. Mot. Summ. J. ¶¶ 8-9).
The Lester v. Shuler consent decree settled excessive force claims brought by prisoners in the Philadelphia Prison System prior to 1987. Lester v. Shuler, No. 87-5893 (E.D.Pa. Mar. 17, 1988). Pursuant to the decree, the Society is permitted to interview prisoners involved in alleged incidents of excessive force for the purpose of preparing a report. Id. The Society's report is forwarded to the Board of Directors of the Philadelphia Prisons, the Superintendent of the Philadelphia Prisons and the Philadelphia District Attorney's Office for consideration of possible criminal investigation. Id. The Society has no responsibility to investigate the veracity of the claims. Its role is solely to report incidents to the proper authorities. Id. Nothing in the consent decree or in the prison's policy provides that a Society report will constitute a grievance.
There is a separate section of the inmate handbook which discusses the Lester v. Shuler report relied upon by the plaintiff. The handbook explains that the Society is permitted to review all reports of an alleged incident of excessive force and may interview the inmate to determine whether to forward the incident to the Philadelphia District Attorney's office for further investigation. (Philadelphia Prison System Inmate Handbook at 47, found at Def. Resp. to PI. Reply to Def. Mot. Summ. J. at Ex. A). Nowhere in the handbook is there any suggestion that the Society's interview of an inmate or its filing of a report constitutes an alternative to the inmate's filing of a grievance. Id.
Notwithstanding the handbook's clear instructions, the plaintiff seeks to convert the Lester v. Shuler report into an official prison grievance, suggesting that the prison system was given "a chance to deal with the prison personal [sic] whom the complaint was made against, thereby exhausting administrative remedies before the complaint reached Federal Court." (Stmt. Material Facts in Support of or in Opp. to Mot. Summ. J. ¶ 1). A Lester v. Shuler report, as described both in the consent decree and in the handbook, does not implicate the inmate grievance procedures. Accordingly, especially in light of the plaintiffs prior experience in filing grievances, we cannot accept the plaintiffs argument that his reporting the incident to the Society constitutes a properly filed grievance with the prison officials.

Conclusion
Without any specific supportive facts in the record, the plaintiffs bald assertions alone cannot overcome the defendants' motion for summary judgment. See Petruzzi `s IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc., 998 F.2d 1224,1230 (3d Cir.1993).[5] The defendants have produced the affidavits of prison officials who manually and electronically searched the prison databases and found no record of a grievance filed by the plaintiff in 2000. Despite his obligation to do so, the plaintiff offers nothing to rebut or challenge the defendants' assertions that no proper grievance was filed by or on his behalf. See Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing Fed.R.Civ.P. 56(c)). Therefore, because *832 the plaintiff failed to exhaust his administrative remedies by filing a grievance pursuant to the available remedial process, we must grant the defendants' motion; and, judgment will be entered in favor of the defendants and against the plaintiff.
An order follows.

ORDER
AND NOW, this 27th day of March, 2003, upon consideration of defendants' Motion For Summary Judgment (Docket No. 24), the plaintiffs response, the Defendants' Statement of Undisputed Facts in Support of Defendants' Motion for Summary Judgment (Docket No. 28) and the Plaintiffs Answers to Defendants' Statement of Undisputed Facts (Docket.No.29), it is ORDERED that the defendants' motion is GRANTED.
JUDGMENT IS ENTERED in favor of defendants and against plaintiff.
NOTES
[1] The plaintiff has pursued this action pro se and was granted leave to proceed in forma pauperis on October 31, 2000. Accordingly, this Court has considered the plaintiff's pro se pleadings deferentially, affording the plaintiff the benefit of the doubt where one exists. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998) (citing U.S. ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969)).
[2] Corrections Officer Mason is a named defendant and the Deputy City Solicitor representing the City of Philadelphia has entered her appearance on behalf of Mason, and he is a movant on the current motion. However, Corrections Officer Mason has never been properly served by the plaintiff. Still attached to the plaintiff's amended complaint is a USM-285 form, which is used by litigants to request that the U.S. Marshal make service. It appears an administrative oversight prevented the U.S Marshal from ever receiving the completed USM-285 form.
[3] Contrary to the defendants' argument, the PLRA exhaustion requirement is not jurisdictional in nature. Failure to comply with the PLRA does not automatically deprive a federal court of subject matter jurisdiction. See Ray v. Kertes, 285 F.3d 287, 292 n. 4 (3d Cir.2002) (quoting Nyhuis v. Reno, 204 F.3d 65, 69 n. 4) (3d Cir.2000). Instead, the failure to exhaust must be raised as an affirmative defense. Id. at 295.
[4] The plaintiff is currently incarcerated at S.C.I. Greene in Waynesburg, Pennsylvania.
[5] The standard set forth in Petruzzi is as follows: [I]n all cases summary judgment should be granted if, after drawing all reasonable inferences from the underlying facts in the light most favorable to the nonmoving party, the court concludes that there is no genuine issue of material fact to be resolved at trial and the moving party is entitled to a judgment as a matter of law. Where the movant has produced evidence in support of its motion for summary judgment, the nonmovant cannot rest on the allegations of pleadings and must do more than create some metaphysical doubt.

998 F.2d at 1230.