Joshua **LINER**, Plaintiff,

v.

Glenn S. **GOORD**, et al., Defendants.

No. 99–CV–6084L.

United States District Court,
W.D. New York.

March 25, 2004.

Joshua Liner, Bronx, NY, pro se.

Emil J. Bove, Jr., Office of New York State Attorney General, Rochester, NY, for Defendants.

## DECISION AND ORDER

LARIMER, District Judge.

## INTRODUCTION

Plaintiff, Joshua Liner, formerly an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), commenced this action *pro se* under 42 U.S.C. § 1983 on February 25, 1999, against several DOCS employees and supervisory officials in connection with two incidents that occurred at Attica Correctional Facility. Plaintiff alleges that Corrections Officer J. Stanton assaulted him on February 2, 1998 in violation of his Eighth Amendment rights. Plaintiff also asserts that Corrections Officers R. Nutty, R. Bridger, L. Williams, and John Doe # 1 [1] violated his First, Eighth, and Fourteenth Amendment rights by assaulting him on October 9, 1998, filing false misbehavior reports against him, and conspiring to retaliate against him for filing a previous lawsuit against Attica officials. Plaintiff claims that Corrections Sergeant Wright was present for (but did not participate in) the October assault and failed to intervene to protect him. Finally, plaintiff asserts claims against former Attica Superintendent Walter Kelly and DOCS Commissioner Glenn Goord for failure to protect based on letters plaintiff sent to them complaining of alleged misconduct by Attica personnel in 1998.

---

**1.** Plaintiff was directed to identify through discovery the identity of John Does # 1, # 2, and # 3 and then apply to the Court for an order directing amendment of the caption and service on those defendants. Dkt. # 3, at 11; Dkt. # 6, at 2. To date, plaintiff has filed nothing regarding the identity of any of these defendants. In addition, it appears defendant L. Williams has never been served in the action and has not otherwise appeared.

Defendants have moved for summary judgment on the ground that plaintiff has failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), and the Supreme Court's decision in *Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Defendants Kelly and Goord argue that summary judgment is warranted for the additional reason that they lacked personal involvement in the alleged constitutional violations. Dkt. # 47.

For the reasons set forth below, defendants' motion is granted in part and denied in part, and the claims against Goord and Kelly are dismissed.

## DISCUSSION

### I. Exhaustion of Administrative Remedies

Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under [section 1983] of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." New York State regulations provide for a three-step administrative review process. *See* 7 N.Y.C.R.R. § 701.7. First, "an inmate must submit a complaint to the Grievance Clerk within 14 calendar days of an alleged occurrence ...." 7 N.Y.C.R.R. § 701.7(a)(1). The grievance is then submitted to the inmate grievance resolution committee ("IGRC") for investigation and review. If the IGRC's decision is appealed, the inmate may appeal to the superintendent of the facility, and if the superintendent's decision is appealed, the Central Office Review Committee ("CORC") makes the final administrative determination. *See* 7 N.Y.C.R.R. § 701.7. In general, it is only after exhausting all three levels of the administrative review that a

prisoner may seek relief pursuant to 42 U.S.C. § 1983 in federal court. *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir.2001); *Santos v. Hauck*, 242 F.Supp.2d 257 (W.D.N.Y.2003).

However, there is an alternative procedure available to an inmate who, like plaintiff, claims that he was harassed by corrections officers. *See* 7 N.Y.C.R.R. § 701.11. The inmate "should first report such occurrences to the immediate supervisor of [those] employee[s]." 7 N.Y.C.R.R. § 701.11(b)(1). The inmate's complaint must be given a grievance number and recorded in sequence. 7 N.Y.C.R.R. § 701.11(b)(2). Thereafter, the superintendent must determine whether, if true, the grievance would represent a bona fide case of harassment. 7 N.Y.C.R.R. § 701.11(b)(3). If the superintendent determines that the grievance does not represent a bona fide case of harassment, then the grievance is submitted to the IGRC for resolution in conformance with the usual IGP procedure found in Section 701.7, outlined above. *Id.* If the superintendent finds that the grievance is a harassment issue, he shall either initiate an internal investigation or request an investigation at the State level. 7 N.Y.C.R.R. § 701.11(b)(4).

The Second Circuit has held "that under the administrative scheme applicable to New York prisoners, resolution of an inmate's grievances through informal channels can satisfy the exhaustion requirement of 42 U.S.C. § 1997e(a)." *Ortiz v. McBride*, 323 F.3d 191, 194 (2d Cir. 2003) (citing *Marvin v. Goord*, 255 F.3d 40, 43 n. 3 (2d Cir.2001) (per curiam)); *see also Richardson v. Goord*, 347 F.3d 431, 434–35 (2d Cir.2003) (question of fact precluded summary judgment regarding whether plaintiff's informal efforts to ex-

haust his administrative remedies was sufficient to satisfy PLRA).

 I find that defendants have not met their initial burden of proving that plaintiff failed to exhaust his administrative remedies. In support of their motion, defendants filed the affidavit of Thomas G. Eagen, the Director of the Inmate Grievance Program. Eagen states that CORC has no record or indication that plaintiff filed any appeals with CORC from grievances he filed at Attica in 1998 regarding the claims he asserts in this lawsuit. Dkt. # 52. Relying solely on this fact, defendants argue that they are entitled to summary judgment on the issue of exhaustion. However, on the record before me, I cannot make this determination as a matter of law.

With respect to the February 1998 incident, it is undisputed that plaintiff wrote to Superintendent Kelly complaining about the alleged assault. Dkt. # 51, Ex. B. Further, the record shows that Kelly referred the matter for an investigation at the facility level. Plaintiff and Officer Stanton were interviewed, and DOCS officials prepared written statements and investigative reports concerning the incident. Dkt. # 51, Exs. I, J, K, and L. It appears, then, that plaintiff grieved the alleged assault through the procedure outlined in 7 N.Y.C.R.R. § 701.11.

What is not clear, and what the defendants have failed to show, is that Kelly treated plaintiff's complaint as a "grievance" in accordance with the regulations. Irrespective of whether plaintiff filed a grievance pursuant to section 701.7 or 701.11, Kelly was required to respond to it within twelve days, explain the basis for his decision, inform plaintiff of his right to appeal, and provide simple instructions on how to appeal. *See* 7 N.Y.C.R.R. §§ 701.7(b)(6); 701.11(b)(5). In support of the motion, defendants have failed to file Kelly's response to plaintiff's grievance, and there is no other evidence that plaintiff received a response, or was informed of his right to appeal.

Therefore, an issue of fact exists regarding what occurred at Attica with respect to plaintiff's grievance which precludes summary judgment at this time. *See Morris v. Eversley,* 205 F.Supp.2d 234, 240–41 (S.D.N.Y.2002) (plaintiff exhausted her administrative remedies through informal channels by writing letter to Superintendent, who failed to comply with procedures set forth in 7 N.Y.C.R.R. § 701.11); *Arnold v. Goetz,* 245 F.Supp.2d 527, 537 (S.D.N.Y.2003) ("an inmate's technical failure to exhaust administrative remedies before commencing a § 1983 action may be excused where officials prevented him from utilizing a grievance procedure"). It may be that Kelly fully complied with the requirements of the regulations, and that plaintiff simply failed to complete the review process. However, based on the record presently before the Court, that determination cannot be made as a matter of law.

Likewise, with respect to the alleged assault, conspiracy, and retaliation in October 1998, the record is not clear regarding what steps, if any, plaintiff took to grieve this claim, and whether Attica personnel prevented him from doing so. In his complaint and the exhibits attached to it, as well as his affidavit in response to defendants' motion, plaintiff states that he filed grievances concerning the October 1998 incident, but that the grievance supervisor at Attica obstructed his efforts or failed to process those grievances. *See* Dkts. # 1, Ex. A2; Dkt. # 4, Ex. A2; Dkt. # 55. Defendants, however, did not address plaintiff's allegations regarding his effort to exhaust his claims in either their original motion or in a reply.

■ The Second Circuit recently held that the PLRA's exhaustion requirement is not jurisdictional in nature, and is, therefore, subject to equitable doctrines such as tolling, estoppel and waiver. *Richardson,* 347 F.3d at 434; *see also Lane v. Doan,* 287 F.Supp.2d 210, 212–13 (W.D.N.Y.2003) (prisoner deemed to have exhausted administrative remedies where record was clear that he made reasonable efforts to exhaust but was impeded by prison officials); *see also Miller v. Norris,* 247 F.3d 736, 740 (8th Cir.2001) ("a remedy that prison officials prevent a prisoner from 'utiliz[ing]' is not an 'available' remedy under § 1997e(a)"); *Thomas v. New York State DOCS,* No. 00 Civ. 7163, 2002 WL 31164546, at *3 (S.D.N.Y. Sept. 30, 2002) ("where a prisoner has made a 'reasonable attempt' to file a grievance, and prison officials have prevented the prisoner from filing that grievance, the grievance procedure is not 'available' to the [inmate], and thus the [PLRA] does not preclude the prisoner from suing in federal court"); *Arnold,* 245 F.Supp.2d at 537 ("In essence, prison officials cannot have it both ways—they cannot obstruct an inmate's pursuit of administrative exhaustion on the one hand and then claim the inmate did not properly exhaust these remedies on the other.").

Defendants have not put sufficient facts before the Court regarding what occurred at the facility level relative to this grievance, or what efforts, if any, plaintiff took to exhaust his administrative remedies for the October 1998 incident. Therefore, the Court cannot address plaintiff's allegations regarding obstruction or determine whether he is entitled to equitable relief. Accordingly, defendants have not established their entitlement to judgment as a matter of law on the exhaustion issue at this time.

## II. Personal Involvement of Defendants Kelly and Goord

Plaintiff's claims against Kelly and Goord, however, must be dismissed for lack of personal involvement in the conduct about which plaintiff complains. This Court may dismiss a claim with prejudice without first ruling on the exhaustion issue, where the claim clearly lacks merit. *See* 42 U.S.C. § 1997e(c)(2); *Mills v. Garvin,* No. 99 Civ. 6032, 2001 WL 286784, *3 (S.D.N.Y. Mar. 2, 2001).

■ Where a prisoner asserts an Eighth Amendment claim against a supervisory official, he must show that the supervisor had sufficient personal involvement in the alleged constitutional deprivation. *Gaston v. Coughlin,* 249 F.3d 156, 164 (2d Cir.2001). Personal involvement may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995); *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986).

Construing plaintiff's *pro se* response liberally and interpreting it to raise the strongest argument that it suggests, *see Corcoran v. New York Power Auth.,* 202 F.3d 530, 536 (2d Cir.1999) (quotations omitted), plaintiff argues that Goord and Kelly are liable for the October 1998 assault by failing to act on information that unconstitutional acts were occurring, and by failing to remedy those acts. Plaintiff seeks to impose supervisory liability based on the informal complaints plaintiff sent to

Goord and Kelly in 1998 alleging that he had been assaulted by corrections staff at Attica on or about February 1, 1998, and May 13, 1998.

■ However, "the fact that an official ignored a letter alleging unconstitutional conduct is not enough to establish personal involvement." *Thomas v. Coombe,* No. 95 Civ. 10342, 1998 WL 391143, *6 (S.D.N.Y. July 13, 1998) (citing *Gayle v. Lucas,* No. 97 Civ. 0883, 1998 WL 148416 (S.D.N.Y. Mar. 30, 1998)); *see also Higgins v. Coombe,* No. 95 Civ. 8696, 1997 WL 328623 (S.D.N.Y. June 16, 1997). Plaintiff cannot base liability solely on Goord's or Kelly's supervisory capacity over the corrections officers involved in the October 1998 incident, or the fact that they held the highest positions of authority at DOCS or Attica. *Thomas,* 1998 WL 391143 at *6; *see also Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996); *Al–Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1065 (2d Cir.1989); *Hernandez v. Artuz,* No. 94 Civ. 0212, 1996 WL 631707 (S.D.N.Y. Oct. 30, 1996).

■ Moreover, it is undisputed that, in accordance with DOCS procedures, Goord never saw these letters. Rather, the letters were received in his office, reviewed by his staff, and forwarded to the appropriate official for investigation and response. Each of plaintiff's complaints were investigated and found to be without merit. *See* Dkt. # 50, Exs. G, H, I, J, and K. There is no evidence that Goord had any other personal involvement in the alleged unconstitutional violations.

Likewise, plaintiff does not allege that Kelly was personally involved in the unconstitutional acts of October 9, 1998. Rather, he seeks to hold Kelly liable based on his position as Attica's Superintendent and the letters he sent to Kelly in 1998. Only one of those complaints alleged excessive force by an officer involved in the October 1998 incident. That complaint was investigated in February 1998 and found to be without merit. The other complaints concerned mostly personal property issues. Kelly did not receive notice of an imminent assault by defendants, and there is no evidence in the record upon which a reasonable juror could conclude that plaintiff's letters should have alerted Kelly that plaintiff faced a substantial risk of serious harm from these defendants.

Where a supervisor's involvement in a prisoner's complaint is limited to forwarding of correspondence to appropriate staff, the supervisor has insufficient personal involvement to sustain a § 1983 cause of action. *See Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997) (summary judgment affirmed where commissioner referred plaintiff's letter to the prison superintendent); *Garvin v. Goord,* 212 F.Supp.2d 123, 126 (W.D.N.Y.2002) (granting summary judgment to DOCS Commissioner based on lack of personal involvement); *Farid v. Goord,* 200 F.Supp.2d 220 (W.D.N.Y.2002) (dismissing action against DOCS Commissioner and Attica Superintendent for lack of personal involvement where plaintiff merely sent petition to them and each referred the petition down the chain of command for investigation). Therefore, the claims against Goord and Kelly are dismissed with prejudice.

### CONCLUSION

Defendants' motion for summary judgment (Dkt. # 47) is granted in part and denied in part; the claims against Glenn Goord and Walter Kelly are dismissed with prejudice; the defendants' motion based on the failure to exhaust administrative remedies is denied at this time, without prejudice.

IT IS SO ORDERED.