**Paul MARAGLIA, Plaintiff,**

**v.**

**Michael MALONEY, et al., Defendants.**

**Civil Action No. 01–12144–RBC.**

United States District Court,
D. Massachusetts.

Aug. 16, 2007.

See also 2006 WL 3741927.

Paul Maraglia, Brockton, MA, pro se.

**20.** *Id.*

Stephen G. Dietrick, MA Department of Correction Legal Division, Boston, MA, for Defendants.

*MEMORANDUM AND FOURTH OR-DER ON MOTION TO DISMISS (# 33) (CONVERTED INTO MO-TION FOR SUMMARY JUDG-MENT)*

COLLINGS, United States Magistrate Judge.

### I.  The Issue Presented

Simply put, the question which the Court must answer in this case is this: if there are disputed issues of fact as to whether a prisoner plaintiff has exhausted his administrative remedies before commencing suit as required by the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e *et seq.*, and one or more parties have demanded a jury trial, must the disputed issues of fact be put to the jury for resolution, or, alternatively, may the Court resolve them?

### II.  Background [1]

This matter is before the Court on the defendants' Motion to Dismiss (# 33) on lack of exhaustion grounds, which the Court converted into a motion for summary judgment. Following an evidentiary hearing on February 21, 2007, which the Court convened in light of *Woodford v. Ngo,* —— U.S. ——, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006), the Court determined that disputes of fact existed on whether the plaintiff has exhausted his administrative remedies under the PLRA. At the close of the hearing, the Court requested briefing on whether the Court or a jury should decide disputed issues of fact on the question of whether the plaintiff has exhausted his administrative remedies. On March 7, 2007, the defendants submitted

their Post–Hearing Memorandum of Law (# 48) in which they argue that the threshold question of exhaustion of administrative remedies under the PLRA is one for the court to decide. The plaintiff did not submit a brief on the issue.

### III.  Analysis

■  Shortly before the hearing, the Supreme Court decided *Jones v. Bock,* —— U.S. ——, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). *Bock* first holds that exhaustion of remedies is an affirmative defense under the PLRA. This had been the law of the First Circuit pre-*Bock.  See Casanova v. Dubois,* 304 F.3d 75, 78 n. 3 (1st Cir. 2002). In addition, in reaching this determination, Bock admonishes that the normal Federal Rules of Civil Procedure apply under the PLRA (and hence to the affirmative defense of exhaustion), and that "courts should generally not depart from the usual practice under the Federal Rules on the basis of perceived policy concerns." *Bock,* —— U.S. ——, 127 S.Ct. at 919. Bock made clear that the exhaustion defense under the PLRA is to be treated like any other affirmative defense, subject to the "usual procedural practice." *Bock,* —— U.S. at ——, 127 S.Ct. at 920.

■  The Court acknowledges the case law cited in the defendants' brief that determines that the question of exhaustion under the PLRA is one to be resolved by the court and not by a jury. (*See* # 48 at 2–6) Those cases pre-date *Bock;* some, at least, appear to rest on "perceived policy concerns," such as the interest in limiting the number of frivolous prisoner law suits. In any event, the Court must reject as contrary to Bock the defendants' bare argument that "[i]t is appropriate to treat exhaustion in prisoner cases differently from other defenses." (# 48 at 6)  Post–

---

**1.** The Court presumes familiarity with the Court's previous discussion of this issue set

out in *Maraglia v. Maloney,* 2006 WL 3741927 (D.Mass., Dec.18, 2006).

*Bock*, the Court thinks the proper inquiry is whether the Federal Rules of Civil Procedure themselves permit the Court to resolve an affirmative defense such as exhaustion of remedies where there are underlying disputes of fact, as here.

■ Ordinarily, where questions of fact are present, affirmative defenses are submitted to the jury:

> The general principles of practice under Rule 56 also apply to the assertion of defenses by a motion for summary judgment. The motion will be granted when it raises at least one legally sufficient defense that would bar plaintiff's claim and that involves no triable issue of fact. On the other hand, if all of the moving party's defenses either are legally inadequate or require the adjudication of fact issues, the request for summary judgment will be denied.

Charles Alan Wright et al., 10B *Federal Practice and Procedure*, § 2734 (3d ed.1998). Bock notes that, as with a statute of limitations defense,[2] a prisoner complaint may be subject to dismissal based on the ordinary standards for dismissal, but "not on the nature of the ground in the abstract." *Bock*, —— U.S. at ——, 127 S.Ct. at 921. In this vein, the Court notes that, under First Circuit law, "[w] here questions of fact are presented, statute of limitations defenses are ordinarily submit-

ted to the jury." *Meléndez–Arroyo v. Cutler–Hammer de P.R. Co., Inc.*, 273 F.3d 30, 38 (1st Cir.2001). Thus, the ordinary practice is to submit disputed questions underlying affirmative defenses to the jury.

Notably, *Meléndez–Arroyo* addressed, among other things, the question whether equitable tolling of the statute of limitations is a question for the judge or the jury in the face of a statute of limitations that had unquestionably run. *Id.* at 38. Noting that cases went in both directions on the issue, the First Circuit determined in that case that the district court on remand could resolve any disputes of fact underlying the equitable tolling issue. *Id.* at 39. *Meléndez–Arroyo* reasoned first that because the statute of limitations had indisputably run in the case, the case would have necessarily been dismissed "unless equitable relief is afforded by the court." *Id.* at 38. Second, the First Circuit noted that the question whether equitable tolling applied on the basis of the plaintiff's mental disability had "relatively slender" connection to the merits of the case.[3] *Id.* at 39. Finally, assessing the propriety of tolling the statute of limitations in the face of the plaintiff's claim of mental disability "call [ed] for assessments that a judge may be far better able to make than a jury [and] resemble [d] in some measure the

---

**2.** Other courts have compared the exhaustion defense to the statute of limitations defense. *See Casanova v. Dubois*, 304 F.3d 75, 78 n. 3 (1st Cir.2002) (and relevant cases cited).

**3.** This appears to be the rationale underlying the Ninth Circuit's conclusion in *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir.2003), that the court should resolve the exhaustion of remedies issue. In *Wyatt*, the Ninth Circuit determined that "failure to exhaust nonjudicial remedies that are not jurisdictional should be treated as a matter in abatement, which is subject to an unenumerated Rule 12(b) motion rather than a motion for sum-

mary judgment." *Id.* at 1119. *Wyatt* further held that a court may decide disputed of issues of fact on the theory that summary judgment is on the merits while dismissal for failure to exhaust nonjudicial remedies is not. Although *Meléndez–Arroyo* considered the relationship between the equitable tolling issue and the underlying merits in deciding that the court in that case should resolve the equitable tolling issue, other considerations were also in play (such as the equitable powers of the court) and the Court does not read *Meléndez–Arroyo*'s reasoning to compel the rule stated in *Wyatt*.

question, left to the judge, whether a criminal defendant is capable of assisting in his own defense." *Meléndez–Arroyo,* 273 F.3d at 39. On the other hand, "typical statute of limitations questions-when the injury occurred, when the reasonable plaintiff would have learned of it, whether there was concealment by the defendant— are archetypal factual issues fit for jury resolution and, in addition, are ordinarily closely intertwined with merits issues of 'what happened here.' " *Id.* at 38.

In this case, because the plaintiff essentially asserts that he filed grievances in the time and place required by Department of Corrections' ("DOC") requirements, and the defendants assert that institutional records show that he did not, the resolution of the exhaustion question depends, in the Court's view, on credibility determinations—"archetypal jury issues fit for jury resolution." Here, the defendants correctly maintain that the plaintiff has never argued that the prison grievance system was not available[4] to him. Indeed, the plaintiff has consistently maintained that he filed grievances after each instance of

alleged abuse "all the way up." At the hearing on the matter, the plaintiff testified that he filed his grievances in the boxes designated for filing grievances, and that he "always made sure" that he filed his grievances within 10 days of the incident, as required. He complains, however, that he never received responses to any of his grievances, and that the Institutional Grievance Coordinator ("IGC") never gave him receipts to his grievances. For example, the plaintiff testified that he filed a grievance concerning defendant Peckham, but that he waited for "a few weeks" but never received a response. In short, the plaintiff has testified that he filed his grievances within the time and at the place required, but that the grievances went unanswered.

■ At the hearing on the matter, the plaintiff also admitted that he could produce no documentation to support his assertion that he filed grievances. This fact, however, is not determinative. The plaintiff's statements under oath that he filed grievances at the time and place required by the regulations suffice here to create a

---

**4.** The Second Circuit, in *Snider v. Melindez,* 199 F.3d 108, 113–114 (2nd Cir.1999), stated that "[w]hether an administrative remedy was available to a prisoner in a particular prison or prison system, and whether such remedy was applicable to the grievance underlying the prisoner's suit, are not questions of fact. They either are, or inevitably contain, questions of law." The defendants rely on *Snider* in support of their position. The Court reads *Snider* more narrowly. *See also Mojias v. Johnson,* 351 F.3d 606, 609–610 (2nd Cir. 2003) (clarifying *Snider* ). *Snider* stated that "[w]here administrative remedies are created by statute or regulation affecting the governance of prisons, the existence of the administrative remedy is purely a question of law." *Snider,* 199 F.3d at 114. In this sense, the Court agrees that courts in the first instance are "obligated to establish the availability of an administrative remedy from a legally sufficient source." *Id.* Here, there is no question that DOC regulations provide the administra-

tive scheme in question; by contrast, the district court in *Snider* had relied on an inmate's concession that administrative remedies were "available."

Notably, district courts within the Second Circuit have regularly denied motions for summary judgment where disputes of fact remain. *See, e.g., Liner v. Goord,* 310 F.Supp.2d 550, 553 (W.D.N.Y., 2004); *Evans v. Jonathan,* 253 F.Supp.2d 505, 506 (W.D.N.Y., 2003) (finding that plaintiff had "raised an issue of fact regarding whether he sufficiently exhausted his administrative remedies"); *see also Lunney v. Brureton,* 2007 WL 1544629, *10 & n. 4 (S.D.N.Y., May 29, 2007) (denying summary judgment on exhaustion question and noting that, post-*Bock,* "it is not clear that factual disputes regarding the exhaustion defense should ultimately be decided by the Court"), report and recommendation adopted, 2007 WL 2050301 (S.D.N.Y., Jul.18, 2007) (slip copy).

dispute of fact. The defendants sought to suggest that the plaintiff should have filed grievances grieving his failure to receive responses to his grievances.[5] However, the DOC regulations are silent about what an inmate must do if the IGC does not respond to his grievances, as the plaintiff contends here, nor do they require an inmate to file a grievance grieving prison personnel's inaction. *Cf. Harvey v. City of Philadelphia,* 253 F.Supp.2d 827, 830 (E.D.Pa.2003) (noting that "prison handbook specifically provides that an inmate can forward a grievance directly to the Commissioner if he believes that he 'is being denied access to the grievance process, for example, his/her grievance allegedly has been destroyed by staff'"). So, at most, the defendants' arguments and evidence at this juncture constitute an effort to undermine the plaintiff's credibility on the exhaustion question, but they do not suffice, as a matter of law, to demonstrate non-exhaustion. Under these circumstances, the Court must conclude that questions of fact remain. *Cf. Tibbs v. Massachusetts,* 2007 WL 2114673 (D.Mass., Jul.20, 2007) (disputes of fact precluded summary judgment on exhaustion question despite IGC's affidavit averring that institutional records showed no grievance was filed, where inmate submitted unsigned copy of grievance and sworn statement that it was timely filed).

In short, the Court declines to resolve the exhaustion question at this juncture, having determined that disputes of fact remain. This is simply not an instance in which the record conclusively establishes non-exhaustion. *See, e.g., Acosta v. United States Marshals Service,* 445 F.3d 509, 512 (1st Cir.2006) (section 1983 claimant did "not claim to have sought any adminis-

trative remedy," except to argue that he fulfilled exhaustion requirement by filing complaint with Marshals Service which was, as a matter of law, inadequate); *LaMarche v. Bell,* 2006 WL 2927242, at *5 (D.N.H., Oct.13, 2006) (inmate's grievances were not properly exhausted under *Ngo* because inmate's own pleadings established that inmate had filed grievances out of time, and with wrong authority); *Andrade v. Maloney,* 2006 WL 2381429, *6 (D.Mass., Aug.16, 2006) (inmate's own statements established failure to comply with filing deadline).

■ Finally, the Court rejects the defendants' argument that the plaintiff can be deemed to have waived a jury trial. (See # 48 at 1) The defendants demanded a jury trial in their Answer (# 27 at [3] ), and "'[a] plaintiff is entitled to rely on a defendant's jury demand to preserve his own right to a jury trial.'" *Concordia Co., Inc. v. Panek,* 115 F.3d 67, 69–70 (1 Cir., 1997) (quoting *Dell'Orfano v. Romano,* 962 F.2d 199, 202 (2 Cir.,1992)). Thus, "[a]ny party can preserve its right to a jury by making a timely demand for a jury trial, Fed.R.Civ.P. 38(b), and once the demand is made, both parties must consent before it can be withdrawn, Fed.R.Civ.P. 38(d), 39(a)." *Concordia Co., Inc.,* 115 F.3d at 69.

## IV. Conclusion and Order

The Court determined at the hearing conducted on February 21, 2007, that disputes of fact remain on the issue of whether the plaintiff has exhausted his administrative remedies. It is the Court's conclusion that those disputed issues of fact must be resolved by the jury and not

---

5. The plaintiff testified that he complained at "happy hour" about the inaction on his grievances. The plaintiff described "happy hour" as an informal setting at which inmates could air their grievances and complaints to the Superintendent and others.

the Court.[6] Accordingly, it is ORDERED that the Defendants' Motion to Dismiss (# 33) be, and the same hereby is, DENIED.

6. Of course, if all parties waive their right to a jury trial, the Court could decide disputes in a non-jury proceeding.

In *Parker v. Robinson*, 2006 WL 2904780 (D.Me., Oct.10, 2006), a pre-*Bock* case, the court convened an evidentiary hearing on a motion from the defendants after the court had determined that disputes of fact existed on the exhaustion question. In that instance, the court "considered the defendants' request for an evidentiary hearing an appropriate pretrial avenue for resolving this dispute once and for all." Post-*Bock*, the same court has convened an evidentiary hearing for the purpose of resolving disputes of fact on the exhaustion question, but found, after hearing the evidence, that there were no disputed issues of fact. *See Rollins v. Magnusson*, 2007 WL 2302141 (D.Me., Aug.9, 2007). In *Peterson v. Roe*, 2007 WL 432962 (D.N.H. 2007), a post-*Bock* case, the court itself resolved the dispute about whether the inmate had mailed a grievance on a given date, as he had claimed. In none of these cases was the issue raised as to whether disputed questions of fact underlying the exhaustion defense should be resolved by the court or by a jury.